Welch *v.* Barber.

## GIDEON H. WELCH *vs.* WILLARD H. BARBER.

A defendant in a suit procured a postponement through his counsel on the
ground that he was too ill to attend court. The counsel for the plain-
tiff, suspecting that there had been deception, filed an application,
accompanied with affidavits, for an attachment of the defendant for
contempt. An order to show cause was issued by the court and served
on the defendant. He however did not appear, claiming to be too ill,
but his counsel appeared for him and filed an answer, asserting the
fact of his illness, and disclaiming all intention to disobey the court.
To this the plaintiff filed no reply. A hearing was then had in the
absence of the defendant, against the protest of his counsel, and the
court found him guilty of the contempt charged and sentenced him to
pay a fine and costs, the latter taxed as in an ordinary civil suit. Held,
on the defendant's appeal—

1. That the conduct of the defendant, so far as it tended to obstruct and
embarrass the court in the administration of justice, was of the nature
of a contempt, and that, the court below having found it to be a con-
tempt, this court could not, as matter of law, see that it was not so.
2. But that, as the contempt was not committed in the presence of the
court, the court could find the defendant guilty of it only on regular
proof, making a trial necessary.
3. That as the contempt was a criminal one a civil proceeding for its pun-
ishment was irregular; and that the proceeding should have conformed,
as nearly as possible, to those in criminal cases.
4. That the court had no power to proceed to trial and judgment in the
absence of the defendant, and that he had a right to be heard.
5. That affidavits were improperly admitted as evidence on the trial; also
a deposition taken on the part of the plaintiff.
The statute which fixes the penalty for contempts applies only to those
committed in the presence of the court. The manner of dealing with
other contempts is to be determined by the common law.
A civil contempt is one in which the conduct constituting the contempt is
directed against some civil right of the opposing party. A criminal
contempt is conduct that is directed against the dignity and authority
of the court.

Welch *v.* Barber.

In a case of civil contempt the proceeding for its punishment is at the instance of the party interested and is civil in its character; in a case of criminal contempt the proceeding for its punishment should conform as nearly as possible to proceedings in criminal cases, and the proper course, where it does not occur in the presence of the court, is for an informing officer to bring it to the attention of the court.

[Argued May 13th—decided May 28th, 1884.]

APPLICATION for an attachment for contempt of court, made by the plaintiff in a civil suit pending before the Court of Common Pleas for Litchfield County, against the defendant in the suit. The application (omitting a part not found true by the court) was as follows:—

"*Gideon H. Welch* v. *Willard H. Barber.* Court of Common Pleas, Litchfield County, January Term, 1884.

"The plaintiff in the above entitled case respectfully shows, that on the 21st day of January, 1884, while said case was pending in said court, and had been assigned for trial to the jury on that day, when said case was called, the defendant through his counsel moved for a postponement and continuance of said trial on the ground that he was sick and unable to attend court and would not be able to attend court for several days thereafter; and that, relying upon said statement and the written statement of a physician which the defendant had procured, and which his counsel introduced, said court granted a continuance of said cause; and the plaintiff says that said statement was false and designedly made for the purpose of deceiving and imposing upon said court and to obtain said continuance wrongfully; whereas said defendant, as he well knew, was not sick and unable to attend court, but on the same day the defendant was out and at a distance of several miles from his house, in ordinary health and attending to his business, as shown by the affidavit hereto annexed. And the plaintiff says that the act above complained of was in open and flagrant violation and contempt of the authority, dignity and jurisdiction of this court. He therefore moves and prays this court that the said Willard H. Barber may be attached and committed to the common jail in Litchfield

Welch *v.* Barber.

County or otherwise punished as said court shall deem fit for such misconduct and contempt. Dated at Winchester this 23d day of January, 1884."

The affidavit annexed was that of the three members of the board of relief of the town of Torrington, where the defendant resided, stating that he appeared before them for a few minutes on the 21st of January, 1884, the day when he procured the postponement of the case, and did not manifest or complain of ill health.

The court upon the filing of this motion on the day of its date, made an order for the appearance of the defendant before the court on the first day of February, 1884, to show cause why an attachment should not be issued against him, which order was served upon him, with a copy of the motion, by an officer, on the same day.

In pursuance of the order the plaintiff and his counsel appeared before the court on the 1st day of February, 1884. The defendant did not appear, except by his counsel, who represented that his client was sick.

The counsel for the defendant offered a plea in abatement on the ground of want of jurisdiction. The counsel for the plaintiff refused to make any answer to the plea, and the court declined to order the plaintiff to make any answer, but fully heard the defendant's claim thereon, and overruled the plea.

The defendant's counsel then offered a demurrer. The plaintiff's counsel refused to answer it and the court declined to order him to make answer, but the court fully heard the counsel for the defendant thereon, and overruled the demurrer.

The defendant's counsel then filed the following answer:

" That in the matter of the postponement of the case he did nothing to this court contemptuously or disorderly, nor did he obtain the postponement wrongfully, fraudulently or with intent to impose upon or deceive the court, nor has he done or caused to be done knowingly or wittingly any act or matter intending thereby to impose upon the dignity or authority of the court. He further says that the state-

ment furnished to his counsel by the physician was true in
every particular, that he was sick and unable to attend the
trial of said cause or to appear in proper person in said
court ; that said statement was given to his counsel in good
faith and with no view to deceive or commit contempt to
the court.  He admits that he was driven out, warmly clad
and closely wrapped up, by a careful driver, upon said Mon-
day afternoon, it being a bright, warm and pleasant day, to
the village of Torrington, a distance of two miles, and while
there he did appear for a few minutes before the board of
relief of said Torrington, it being, as he understood, his last
and only chance of attending and appearing before said
board.   That he was driven directly home and arrived there
tired, exhausted and weakened by this effort, and that he
did not become able to leave his house again until the fol-
lowing Wednesday.   That he believes that such effort was
injurious to him, and feels confident and believes from said
experience that he could not possibly have reached the court,
nor undergone the perplexities and thought necessary to a
long and closely contested trial at law without endangering
his life.   He further says that he believed and still does
believe from the experience of a former attack of a similar
disease, that it was better for him to keep in the open air
all that he possibly could, and that confinement to the house
and room prevented recovery, and that he has and did upon
days subsequent to said Monday ride out in the open air a
short time on different afternoons if the weather was not
stormy until Saturday last, since which time he has been
unable to leave his house or be driven out as aforesaid.  He
further says that in doing said acts herein admitted he did
not intend to commit contempt to this court, to any order,
decree, rule, regulation, process, officer or party connected
therewith, or to impose upon its dignity or honor, or in any
way to interfere with its proceedings, but that he did believe
that it was right and proper and in perfect keeping with
the practice and rules of all courts to move for a continu-
ance of his case upon the ground of sickness and to furnish
his physician's certificate therefor.   He therefore asks that

he may stand purged of contempt of this court as in said complaint alleged, or that other interrogatories may be put to him, and time given him until he is able to appear before your honor and answer them in proper person."

The court declined to order the plaintiff to file interrogatories for the defendant to answer, as requested by his counsel, and allowed the plaintiff to prove by witnesses the matters alleged in his petition notwithstanding the objections of the defendant's counsel.

The plaintiff offered in evidence the affidavit of George W. Cole, Charles L. McNeil and Burr Lyon, which was annexed to the original application of the plaintiff. The defendant's counsel objected to its admission, but the court admitted it. The said Cole and Lyon afterwards appeared in court and testified at length in relation to the matter set forth in the affidavit.

The plaintiff offered the deposition of Julia A. Birge in evidence. The defendant's counsel objected to its admission, but the court admitted it.

The court adjudged that the defendant should pay a fine and the taxable costs of the application and trial, taxed as in an ordinary civil suit, and amounting to $55.31, the defendant's counsel objecting to any costs being taxed as a part of the sentence. The judgment of the court was as follows:—

"Upon the application of the plaintiff in this case dated January 23d, 1884, made to the present term of this court, claiming that the defendant had committed certain acts of contempt against this court, and asking for process of attachment against the defendant, as per complaint on file. And the defendant having been summoned to appear before said court to answer said complaint on the 1st day of February, 1884, and show cause, if any he had, why the prayer thereof should not be granted; the plaintiff appeared on said day and the defendant appeared by his attorney, D. C. Kilbourn, when both parties were fully heard by the court, by their witnesses and counsel. The court finds that the allegations set forth in said com-

Welch *v.* Barber.

plaint are proved and true. Whereupon it is adjudged that the defendant is guilty of contempt of this court, and that he pay a fine of fifty dollars to the State of Connecticut, together with the costs of these proceedings upon said application for contempt, taxed at the sum of fifty-five dollars and thirty-one cents, and that he be attached of his body and be therefor committed to the common jail in Litchfield, in Litchfield County, and be confined and imprisoned therein till this judgment is fully complied with, or until he be discharged by order of this court or otherwise by due process of law. Dated at Winchester, this 2d day of February, 1884."

Upon this judgment a mittimus was issued, upon which the officer was about to attach the body of the defendant, when he paid the amount of it, with five dollars fees of the officer upon the mittimus.

The defendant appealed from the judgment of the court.

*G. A. Hickox* and *D. C. Kilbourn*, for the appellant, contended—that the application being made and served as an original civil suit, error would lie from the judgment; that the offense of the defendant, if any, was that of a criminal contempt in the presence of the court, the rule being that where the proceeding is merely to compel the party to pay money or perform an act for the benefit of the other party, the contempt is civil, but where the court is merely asserting its authority and no redress is sought for an injury to the other party, the contempt is criminal; that where the contempt is criminal as here the proceeding should be criminal in its character; that such a proceeding being properly a criminal prosecution, the trial of the alleged offense must be governed by the rules governing criminal trials; that in this view the presence of the accused in court was necessary and that without it the court had no jurisdiction of his person for the purpose of trial and conviction; that he had the further right to be confronted by the witnesses against him, and that consequently the affidavit and deposition introduced were inadmissible; that costs could not be taxed

against him according to the rule of civil causes; that the matter alleged and proved did not constitute a contempt; and that the defendant's answer fully purged the contempt, if one existed.

*A. H. Fenn*, for the appellee.

1. The appeal should be stricken from the docket, because the judgment below is not reviewable on error. *Tyler* v. *Hamersley*, 44 Conn., 393; *Middlebrook* v. *The State*, 43 id., 257, 268; Acts of 1882, ch. 50, sec. 1.

2. There is nothing in the defendant's reasons of appeal that cannot be answered by the decisions of this court in recent and well considered cases. It cannot matter by whom a contempt is brought to the attention of the court, but the party aggrieved and injured is the most natural and proper person to do it, especially when, as in this case, he is an attorney and officer of the court. *Rogers Manufacturing Co.* v. *Rogers*, 38 Conn., 121; *Lyon* v. *Lyon*, 21 id., 185. The facts alleged constitute a most flagrant contempt, and if the court had no authority to punish such acts, it would indeed be a proper subject for contempt. *Huntington* v. *McMahon*, 48 Conn., 196. The defendant's plea to the jurisdiction and demurrer were therefore properly overruled. It is not the custom in this state to order interrogatories to be filed. Id., 200. There was no occasion to bring the body of the defendant into court. The court could have proceeded summarily in the first instance. Instead of that he had full notice to appear if he saw cause. He did not see cause to appear in person, but chose to make his appearance by attorney. *Middlebrook* v. *The State*, 43 Conn., 257, 268; *Huntington* v. *McMahon*, 48 id., 174. The costs were necessarily incurred, and therefore properly taxed. A man who brings an offender to justice ought not to be punished for doing it in order to spare the wrongdoer. *Rogers Manf. Co.* v. *Rogers*, 38 Conn., 124; *Middlebrook* v. *The State*, supra. The court did not err in treating this as a civil proceeding, because it is such; it was the sole judge of what evidence it would hear. If it were

otherwise, the reading of the affidavit appended to the motion could not harm. The facts therein recited were substantially confessed by the defendant in his answer, and two of the three affiants appeared in court and testified orally to the same facts. As to the deposition, the defendant was notified, and was present at its taking. *Middlebrook* v. *The State*, 43 Conn., 267. The court properly refused to order the plaintiff to join issue. *Tyler* v. *Hamersley*, 44 Conn., 409, 410, 411. The defendant ought to be estopped from claiming this to be an interlocutory proceeding, to avoid the payment of certain costs, in the same breath in which he treats it as an original and completed case, in order to stand in court at all. The proceedings, if reviewed at all, should only be to the extent of determining whether the court, in rendering its judgment, acted within the sphere of its jurisdiction. Id., 412.

CARPENTER, J. In a civil suit pending before the Court of Common Pleas the defendant caused his counsel to procure a postponement of the trial on the ground that he was ill and unable to attend court. The plaintiff, suspecting that there was no ground for a postponement, filed a written application, accompanied with affidavits, praying for an attachment for contempt. An order to show cause was served on the defendant. He did not appear in person on account of sickness, but his counsel appeared for him and filed successively a plea in abatement and demurrer, both of which were overruled. They then filed an answer, to which the plaintiff made no reply. A hearing was then had in the absence of the defendant. To prove the facts alleged in the application the plaintiff offered an affidavit signed by three persons, being the same affidavit which is attached to the application. The defendant objected to its admission, but the court admitted it. Two of the affiants subsequently appeared in court and testified in person. The plaintiff also offered a deposition, to the admission of which the defendant's counsel objected, but the court admitted it.

The court found the allegations of the application true,

and sentenced the defendant to pay a fine of fifty dollars and costs. The costs were taxed as in an ordinary civil suit, including complaint, service, court fees, trial fees, &c., against the defendant's objection.

Before proceeding to discuss the questions more particularly raised by the appeal, we will briefly notice the claim that the facts do not constitute a contempt, and consider the nature and character of a contempt generally.

"Contempt is a disobedience to the rules and orders of a court which hath power to punish such offense." "And this word is used for a kind of misdemeanor, by doing what one is forbidden, or not doing what he is commanded." Jacob's Law Dictionary, *in verbum.* "Some of these contempts may arise in the face of the court, as by rude and contumelious behavior; by obstinacy, perverseness or prevarication; by breach of the peace, or any wilful disturbance whatever. Others in the absence of the party, as by disobeying or treating with disrespect the king's writ, or the rules or process of the court, by perverting such writ or process to the purposes of private malice, extortion or injustice; by speaking or writing contemptuously of the court or judges acting in their judicial capacity; by printing false accounts, (or even true ones without proper permission,) of causes then depending in judgment; and by anything, in short, that demonstrates a gross want of that regard and respect which, when once courts of justice are deprived of, their authority (so necessary for the good order of the kingdom) is entirely lost among the people." 4 Black. Com., 285.

The most remarkable instances of contempts, for which any person whatsoever is punishable, are reduced to the following heads in 2 Hawkins's Pleas of the Crown, 220:— 1. Contempts of the king's writ. 2. Contempts in the face of the court. 3. Contemptuous words or writing concerning the court. 4. Contempts of the rules or awards of the court. 5. Abuse of the process of the court. 6. Forgeries of writs, and other deceits of the like kind, tending to

impose on the court.   In Swift's Digest, vol. 2, p. 380, the definition is substantially the same as in Blackstone.

From these definitions it is apparent that the conduct of the defendant may have been of such a character as tended to obstruct and embarrass the court in the administration of justice.   The court below found that it was a contempt, and, the facts being of such a nature that it does not clearly appear as matter of law that they did not and could not constitute a contempt, we are not at liberty to revise the finding on that point.

The statute limits the penalty for contempts in the presence of the court.   Other contempts may exist, such as disobeying injunctions and other orders of the court, which the statute does not provide for, but the manner of dealing with them is to be determined by the common law.   There are other acts which are in defiance of the power and dignity of the court, but which are not actually nor constructively in its presence.   Of this class is the case of *Huntington* v. *McMahon*, 48 Conn., 174.   These too are not within the statute, but are defined and punished by the common law.

The present case belongs to the latter class.   The offender was not personally present in court and the judge could have no knowledge of the facts which constituted the offense except as they were communicated to him by others. He could not of his own motion and upon facts within his own knowledge render judgment against the delinquent.   As the facts must be established by proof a trial was necessary.

Another question which becomes important is, whether the contempt is civil or criminal.   A civil contempt is one in which the conduct constituting the contempt is directed against some civil right of the opposing party, as where an injunction is disregarded or some act required by the court for the benefit of the other party should be neglected.   In cases of contempts of this sort the proceeding for its punishment is at the instance of the party interested and is civil in its character.   Such are the cases of *Lyon* v. *Lyon*,

21 Conn., 185, and *Rogers Manufacturing Co.* v. *Rogers,* 38 Conn., 121. A criminal contempt is conduct that is directed against the dignity and authority of the court, and a proceeding for its punishment should conform as nearly as possible to proceedings in criminal cases. When the court has knowledge of the contempt as it occurs it will of its own motion proceed to punish it; but, when witnesses are required to prove it, the proper course is for some informing officer to bring it to the attention of the court. *Middlebrook* v. *The State,* 43 Conn., 257; *Huntington* v. *McMahon,* 48 Conn., 174.

The process in this case was begun and carried on to the end as a civil case in the name of the plaintiff in the suit pending. That was irregular. But the irregularity might be overlooked and the matter treated as a proceeding by the court of its own motion upon the suggestion of the plaintiff, were it not for the fact that the defendant on the trial was denied some rights and deprived of some privileges to which a party in a criminal proceeding is clearly entitled.

In the first place, it is very clear that the court had no power to proceed to a trial and judgment of condemnation in the absence of the accused. "If such offense be done by a person not present in court, and proper complaint or information be made, the court will either make a rule on the party to attend on a certain day to answer to the matter complained of, or else will make a rule upon him to show cause why an attachment should not be granted against him; or if the offense be of a very flagrant nature, will grant an attachment upon the first complaint; and the party who is ordered to attend, in pursuance of such rule, must appear in person, and not by attorney." 2 Swift's Digest, 382.

In the next place, the accused was entitled to be heard. In cases of this character, where the act was equivocal, and might or might not be a contempt, and it was necessary to examine witnesses in order to determine that question, the party must be present and has a right to be heard. If it

had been made to appear that the matters which the defendant's counsel set up in his behalf in the answer were true, we do not see why he would not have been entitled to a discharge. Those facts were in substance that he was in fact sick, that he was unable to attend court, that there were no false representations, and that he intended no disrespect to the court. It is apparent from the record that the accused had no opportunity to show these facts—an opportunity which the law clearly gives him. 2 Swift's Digest, 382.

The court also erred in admitting the affidavit in evidence on the trial. The affidavit had performed its office when it satisfied the court that this was a case which it ought to notice. It could not be received in evidence to prove guilt without violating two cardinal principles in all criminal trials,—the right of the accused to confront the witnesses against him in open court, and his right to cross-examine them. The error was not healed by the subsequent appearance of two of the affiants as witnesses. The deposition was also improperly received, and for obvious reasons.

For these reasons the judgment of the Court of Common Pleas was erroneous and must be reversed.

The record shows that the defendant sustained damage by such erroneous judgment to the amount of $110.31; for which sum with costs the defendant is entitled to judgment.

In this opinion the other judges concurred.