### TRACY *against* WILLIAMS.

A justice of the peace, after having arrested an offender against the riot act, on view, is not authorized, without a written complaint or information, to bind him over to a higher court for trial.

If a justice of the peace, before whom an offender against the riot act, arrested on view, is brought, to be further proceeded against, make an order, without a previous complaint or information in writing, requiring such offender to be recognized for trial, and on his refusal to comply with such order, commit him to prison, such justice is liable in trespass for false imprisonment.

This was an action of trespass for false imprisonment, tried in *New-London* county, *January* term, 1821, before *Brainard*, J.

The imprisonment alleged in the declaration, was admitted. As a justification the defendant gave in evidence the record of certain proceedings before him, in the capacity of a justice of the peace. The record stated, That on the 31st day of *July*, 1819, at *Norwich* in the county of *New-London*, in consequence of a large collection of persons having come and assembled together in *Water* street in *Chelsea* society, towards evening, unlawfully, and with intent to do unlawful acts, by force and violence, against the peace, &c. *Joseph Williams*, Esq. (the defendant) then being a justice of the peace, in pursuance of the act to prevent and punish Riots, resorted to the place aforesaid, and then and there, with an audible voice, after having commanded silence, made proclamation in the words prescribed by said act; that after proclamation was so made, eight of said persons, so unlawfully and riotously assembled, continued together, and did not disperse them-

4 107
75 355
75 356
4 107
177 139
77 141

HARVARD LAW LIBRARY

*New-London.*
July,
1821.

Tracy
*v.*
Williams.

selves, according to the requirements of said act; that certain persons, whom said justice had called to his assistance, in pursuance of the commands of said justice, gently seized and apprehended said eight persons, of whom *Elisha Tracy*, the plaintiff, was one, and brought them before said justice; that said justice having had personal knowledge and observation of the facts aforesaid, and having further duly enquired into such facts, at the place of holding said court, and it being fully proved, and found by said justice, that the said *Elisha Tracy* and others remained and continued together after said proclamation was made, and refused to disperse themselves, it was considered and adjudged, by said justice, that the said *Elisha Tracy* and others be recognized, with surety, to the treasurer of the county of *New-London*, in the sum of 100 dollars, each, conditioned, that they should appear before the county court to be holden at *Norwich* in and for *New-London* county, on the first *Tuesday* of *December*, 1819, to answer whatever should be objected against them, by the attorney for the state, concerning the charges against them in the matter of said riot, and abide the order of said county court thereon; and in default of recognizing, with surety, as aforesaid, that they, and each of them, be committed to the common gaol in *Norwich* aforesaid, therein to be held until they should be discharged by order of law. *Tracy*, the plaintiff, refused to make recognizance, as required by the order above recited; and for such refusal, was committed to gaol; which was the imprisonment complained of. It was admitted, that the defendant, at the time of these proceedings, was a justice of the peace for *New-London* county.

The judge instructed the jury, that such record was not in law a justification for the commitment of the plaintiff; that a justice of the peace, under the statute relating to riots, has authority on view, to order or cause to be arrested, and brought before him, without complaint or warrant in writing, all persons not yielding obedience to the proclamation; that in such case, he has, moreover, authority, without written complaint, to commit such persons for further examination; but that he has no authority to bind such persons to a court of a higher and final jurisdiction, without a complaint in writing from some informing officer.

Under this direction, the jury returned a verdict for the plaintiff, with one dollar damages; and the defendant moved for a new trial.

*Cleaveland* and *Brainard*, in support of the motion, conten-

ded, 1. That it was competent for the defendant, on his per-
sonal view, to arrest the plaintiff, and hold him for examina-
tion. This the statute expressly authorizes. *Tit.* 139. *s.* 4. *p.*
576. ed. 1808.

2. That it was competent for the defendant, having the
plaintiff so before, him without written complaint or warrant,
to order him to be bound over to the county court for trial, and,
on his non-compliance with such order, to commit him to
prison. The provision of the statute, as applicable to the
case of the offender, *after his arrest*, is general, requiring on-
ly, that he be "proceeded against according to law." How
does the law require a magistrate, in *any* case, to proceed,
where the person charged with an offence is properly before
him for examination? The statute answers "If such matter is
not determinable by a single minister of justice, such authori-
ty shall recognize with surety such person, if bailable, to ap-
pear before the court proper to try and determine the same,
and for want of sufficient bail, shall commit him to gaol for
the purpose aforesaid." In general, a complaint and war-
rant are necessary to authorize an arrest. The law requires
this, for the security of the citizen. But in a few excepted
cases, of which riot is one, the paramount security of the pub-
lic requires that a magistrate should have the power of arres-
ting the offenders, while in the actual commission of the of-
fence, under his own inspection, without complaint or war-
rant. But after an arrest has been legally made, in either
way, there is no need of a complaint. What security does a
complaint afford, after the arrest? At any rate, it is not con-
formable to the usual course of proceeding in other cases, to
require it. In *England*, where a person is arrested, on view,
for a riot, the magistrate makes a record of the arrest, with
the grounds of it, and then binds over; as was done in this
case. *Jacob's L. Dict. tit.* Riot. 3 *Burn's Just.* 203. Such,
also, has been the practice in *Connecticut.* 2 *Swift's Syst.* 387.

3. That if the proceedings were not strictly according to
law, still no action could be sustained against the defendant,
because he acted *judicially*, having jurisdiction of the subject
matter, of the person, and of the process—*i. e.* of the kind of
process. A justice of the peace, holding a court of enquiry,
acts *judicially*. Whether there is sufficient cause for binding
over; the amount of the bond; and the responsibility of the
bondsmen, are subjects upon which he is to exercise his *judg-*

ment. That a magistrate acting judicially, is not liable for the exercise of his judgment, is familiar law. And the justice's record is conclusive as to every fact stated in it. *Gray* v. *Cookson* & al. 16 *East* 13. 22. *Mather* v. *Hood,* 8 *Johns. Rep.* 44. *Phill. Evid.* 260.

4. That, at any rate, *trespass* will not lie. The proceedings of the justice, if erroneous, were not *void.*

*Goddard* and *Gurley,* contra, after some preliminary remarks upon summary judicial proceedings, as being in derogation of the common law, and dangerous to civil liberty, contended, 1. That the record of the justice does not shew a *case,* authorizing his interference in a summary way. By that record, it does not appear, that the plaintiff and his associates were *unlawfully assembled;* no unlawful act being stated, which they did, attempted, or designed to do. The event did not exist, in which alone summary proceedings could be had. In all the *English* forms, the particular acts, with intent to do which the alleged rioters assembled, are set forth : And this is necessary, that it may appear that such acts are unlawful.

2. That if a case existed, which warranted the arrest, the plaintiff could not legally be committed, without complaint or information. The object of the riot act is two-fold : first, to *suppress* the riot; secondly, to *punish* the offenders. The first object only requires a summary proceeding ; and as soon as the arrest is made, that object is accomplished. For the punishment of the offenders, the prosecution may be in the ordinary way.

The summary power is given by the 4th section ; and is given to the sheriff, deputy-sheriff, select-men and constable, as well as to the assistant and justice of the peace. The former are mere *executive* officers ; and it is evident, that the power intended to be given, was such only as executive officers could properly exercise.

Further, the persons arrested are to be carried " before *some* assistant or justice of the peace ;" the justice making the arrest having no more power in relation to ulterior proceedings, than any other justice. It will not be claimed, that any other justice than the one who made the arrest, could bind over, without complaint or information.

Lastly, after the persons arrested are brought before the magistrate, they are to be *proceeded against according to law ;*

which, as no other course is prescribed, must mean *the ordi-* <span></span>*nary course of law.* This is by complaint or information.

3. That the binding over was irregular, inasmuch as it required the plaintiff to appear before the county court, to answer to *whatever should be objected against him.* 2 *Hale's
P. C.* 111.

4. That *trespass* is the proper remedy. *Morgan* v. *Hughes,* 2 *Term Rep.* 225. *Hill* v. *Bateman* & al. 2 *Stra.* 710.

HOSMER, Ch. J. This case presents to the court two questions for determination. 1. Whether by virtue of the statute concerning Riots, a justice of the peace is authorized, on his own *personal view,* to arrest the offenders against that law, and, without written complaint or warrant, to fine, imprison, or bind them over to a superior tribunal. 2. Whether, if he does this, he is liable in *trespass.*

1. The first question proposed must exclusively be determined, by a recurrence to our own law. The *English* statutes, and that of the state of *New-York,* relative to the matter in question, are expressed in terms very different from ours; and require a very different construction. They explicitly authorize justices, and make it their duty, to go to the place where the force is made, and to record it, on their own view; and, in consequence, to fine each offender, and commit him to gaol, until the fine be paid. 4 *Burn's Just.* 76. *Mather* v. *Hood,* 8 *Johns. Rep.* 44. In our statute, there are no provisions analogous with these; nor in the body of the law, except as to the arrest, is the mode of proceeding prescribed.

By the act for preventing and punishing Riots, (*a*) it is enacted, That when three or more persons, assembled together, with intent to do an unlawful act, by force and violence, against the person or property of another, and being required, by any of the civil authority, or by any sheriff or deputy-sheriff, or by any one or more of the select-men or constables of any town where such assembly shall be, by proclamation to be made in the name of this state, to disperse, and depart to their habitations, shall not disperse themselves; or being so assembled, shall do any unlawful act against a man's person or property; and be thereof convicted, by due course of law, before the county court, or before the superior court, in the respective counties where

(*a*) *Stat. p.* 575, 6. ed. 1808.

New-London,
July,
1821.

Tracy
v.
Williams.

said offence is committed, they shall be punished, by fine and imprisonment. The act then, in its fourth section, provides, " That if such persons, so unlawfully and riotously assembled, or any three or more of them, after proclamation made as aforesaid, shall continue together, and not disperse themselves, that then it shall and may be lawful to and for every assistant, justice of the peace, sheriff, deputy-sheriff, select-man, or constable, &c. to *seize* and *apprehend* such persons, &c. and forthwith to carry the persons so apprehended before some assistant or justice of the peace, in order to their being proceeded against according to law." The statute confers no authority to record the force on view, or to adjudge in any manner; but merely to *arrest;* and then, in the most general terms, remits the offenders to the usual course of proceeding in such cases. The ordinary process, as every one knows, is, by warrant, issued on a previous complaint. This is " proceeding according to law." It is very obvious, that the select-man, deputy-sheriff or constable, who arrests, can take no judicial step ; and yet, their power, specially delegated by the act, is equivalent to that of an assistant or justice of the peace. They are authorized to arrest the offenders, and to take them before a justice ; and here terminates the authority given. It then devolves on the justice to see, that proceedings according to law, *in its usual course,* are instituted, and the persons arrested dealt with, pursuant to the established mode of procedure. Our statute, in its requisitions, is founded on a regard to the rights of the citizen, which has been lost sight of, in the *English* law, and in those laws, which follow its footsteps. The punishment of a person, here, is not authorized, on a bare view, which may be very imperfect, and lead to a conviction of the innocent ; but the accused rioter is entitled to a hearing, before his commitment to prison, or being recognized before the superior court, for trial. This mode of proceeding is equitable, practicable, and free from oppression ; while the public rights are adequately protected. And under this construction of the law, it can never be the subject of regret, that an innocent person has been arrested hastily, on a sudden view, and imprisoned for months, before his innocence can be manifested. The defendant's justification, so far as it relates to the *arrest* of the plaintiff, is unquestionably sufficient ; but beyond this, it is of no validity. The

imprisonment of the plaintiff, on his own view, and without complaint or hearing, was wholly extrajudicial and irregular.

2. Whether the defendant is suable in *trespass*, is the remaining consideration. For error in opinion, however palpable and flagrant, no justice or judge is responsible in trespass, if the record shews, that he had jurisdiction, and proceeded regularly. But if he has not jurisdiction over the person, and process, and subject matter, his acts in the assumed capacity of a judge, are void. In the case supposed, he is *not a judge ;* and the authority exercised by him, perhaps with the best motives, is nothing better than mere usurpation. From *The Marshalsea* case, 10 *Co. Rep.* 76. *b.* to the present time, these principles have remained unquestionable. It is said in *Perkins* v. *Proctor,* 2 *Wils.* 384. " Where courts of justice assume a jurisdiction, which they have not, an action of trespass lies against the officer, who executes the process, because the whole proceeding was *coram non judice :* Where there is no jurisdiction, there is no judge ; the proceeding is nothing." The point is too clear and familiar to require further discussion. See *Smith* v. *Boucher* & al. 2 *Stra.* 993. *Grumon* v. *Raymond & al.* 1 *Conn. Rep.* 40. *Slocum* v. *Wheeler* & al. 1 *Conn. Rep.* 429. The case most parallel with the one before us, is that of *Morgan* v. *Hughes,* 2 *Term Rep.* 225. A justice of the peace granted a warrant, *without any information,* upon a supposed charge of felony ; aud in favour of the person imprisoned under it, an action of trespass against the justice was adjudged to be the legal remedy. It was said, by *Ashhurst,* J. " Where a person is committed to prison, by the warrant of a justice, without any accusation, some person is guilty of false imprisonment ; and it must be the imprisonment of the justice, who is the immediate, and not the remote, cause of it."

The imprisonment of the plaintiff was undoubtedly illegal ; and the defendant, although I have no doubt he acted from the purest motives, had no right to issue a warrant of commitment against him. He, therefore, in this respect, was a trespasser ; and the plaintiff's action is rightly conceived.

The other Judges were of the same opinion.

New trial not to be granted.